42044. ALLEN, Executrix v. ROME KRAFT COMPANY.

ARGUED JUNE 6, 1966—DECIDED DECEMBER 1, 1966.

*Edward D. Wheeler,* for appellant.

*Matthews, Maddox, Walton & Smith, John W. Maddox,* for appellee.

FELTON, Chief Judge. ■ The first enumeration of error in this case is as follows: "The trial court erred in not granting the appellant a new trial upon her motion therefor because the verdict of the jury . . . was contrary to evidence and was without evidence to support it." The purpose of the Appellate Practice Act of 1965 and amendments thereto was to eliminate highly technical rules. In a nutshell, it was the intention of the General Assembly that no enumeration of error be dis-

regarded if a reviewable judgment was appealed from and the enumeration of error revealed the error on the part of the trial court which the appellant sought to have corrected and reversed. Where the enumeration of error shows the particular error claimed to have been committed by the trial court, as it does in this case, it should be considered good and passed on. The 1966 amendment provides that: ". . . nor shall it be necessary that the overruling thereof be enumerated as error . . . as the appellate court may consider all questions included in the enumeration of errors provided for in Section 14 herein." Section 14 provides: "The enumeration need not set out or refer to portions of the record on appeal, shall be concise, *and need not conform to the assignments of error abolished* by these rules." (Emphasis supplied).

Since we have held the overruling of a motion for new trial to be a reviewable judgment (*Munday v. Brissette,* 113 Ga. App. 147 (2b) (148 SE2d 55); *Thornton v. State Hwy. Dept.,* 113 Ga. App. 351 (148 SE2d 66), we are of the opinion that when a motion for new trial is filed, as authorized under § 2 of the Act (*Code Ann.* § 6-702)), the effect of the filing of the motion is to toll the time for filing an appeal from the judgment on the verdict until the motion for new trial is overruled (unless appellant should elect to abandon or dismiss the motion). Consequently, an appeal from the judgment filed within 30 days after the overruling of the motion for new trial is timely.

We are further of the opinion that the appellant is entitled, under § 14 of the Act (*Code Ann.* § 6-810) to enumerate as error any ruling or judgment of the court affecting the judgment appealed from. The overruling of a motion for new trial does affect the judgment on the verdict, whether granted or overruled. In our opinion, any other ruling would defeat the intent of liberality and make procedure more technical than it was before the effort to liberalize it.

■ ■ This appeal involves the overruling of a motion for a new trial filed by the protestant in a processioning case in which a jury in the Superior Court of Paulding County found in favor of the line marked favoring the applicant's contention. The applicant is Rome Kraft Company. R. L. Allen was the

protestant who later died and was succeeded as a party by his executor. Paragraph 2 of the application of Rome Kraft Company is as follows: "The eastern and northern lines of said tract where it adjoins lands owned by R. L. Allen are in dispute. Said lines in dispute are described in the deeds of the applicant and the deed of R. L. Allen as the lines between said Land Lot Number 674 and Land Lot Number 675, between said Land Lot Number 694 and Land Lot Number 675, between said Land Lot Number 694 and Land Lot Number 693, and between said Land Lot Number 747 and Land Lot Number 748, all being in the Third District and Third Section of said county. No other lines of said tract owned by applicant are in dispute." The disputed lines to be marked anew are shown by the following diagram:

```
┌─────────────────────┬──────────────────────┐
│             x                               │
│             x                               │
│    674      x     675                        │
│             x                               │
│          xxxxxxxxxxxxxxxx│                   │
│                          │ x                 │
│                          │ x     Allen       │
│  Rome Kraft Co.    694   │ x      693        │
│                          │ x                 │
│                          │ x                 │
├──────────────────┬───────┼───────────────────┤
│                  │       │ x                 │
│                  │       │ x                 │
│                  │ 747   │ x     748         │
│                  │       │ x                 │
│                  │       │ x                 │
└──────────────────┴───────┴───────────────────┘
```

The record in this case is voluminous, consisting of over 200 pages of testimony with many conflicts, some of which are irreconcilable. The conclusion from the testimony in this case and from the lines drawn on the plat made by the processioners, which are absolutely straight, is that the processioners, assisted by a surveyor, started at a point purported to be a line between the two lots south of Lots 747 and 748; that the processioners started at a point several feet from the point which they believed to be on this line and then ran the line northward one degree 30 minutes east and proceeded in that direction until

they came to what they thought was Land Lot 747 and Land Lot 748, which was the first place where the lands of Rome Kraft Company and R. L. Allen met. The processioners did not treat as a corner, in beginning to run a line between Lots 747 and 748, an iron pin west of the line run by the processioners. Instead they began by using a point several feet from the iron pin, which pin they thought to be the true corner. From there the processioners followed the magnetic bearing of north one degree 30 minutes east until they came to a place near Brindle Creek. At this point the processioners did not pretend to run the line northwardly from an established corner, but used as a corner between Lots 674 and 693, a point equidistant from some dogwood stumps and a poplar stump, which point was in the *neighborhood* of the spot where they thought the corner to be. From there the surveyor set his instrument on a magnetic course south 88 degrees 30 minutes west and they proceeded on that course an undertermined number of feet without coming across any landmarks and without going to a fixed monument along this course, etc., etc.

Without going into much more detail, the evidence demanded the finding that the processioners sought to run straight lines where they thought previous ones had been run by another or others. On the entire line run by the processioners there was only one tree which was on the line run which had been marked as a line tree. There were various other marks, such as a wire fence, a piece of cultivated land, a place where timber had been cut on one side of the line, but none of these marks was exactly on the line run. No point selected was a corner which was purportedly shown by the evidence to be the true corner. The evidence shows further that trees on each side of the line run had been blazed on the side of the tree facing the line being run, which means that the blazes on the trees were surveyor blazes, indicating that the line being run at the time the trees were blazed was somewhere between the trees which were blazed. It thus appears that the lines marked by the processioners were straight lines laid off by the surveyor's instruments and based on corners which only approximated the true corners. It is indicated in appellee's brief that the processioners ran the orig-

inal lot lines. Even if this be true, such a line, even if marked on the face of the earth, could not be a line intended to be set up under the law unless the deeds of the parties described the line between the parties as *other than the original land lot lines.* Here the deeds of both parties show as boundaries the original lot lines. It is not the function of processioners to bring into existence any line which had not been before designated on the surface of the earth, or to establish lines merely drawn on paper. *Goodson v. Pope,* 112 Ga. App. 71 (143 SE2d 779) and cit.

The evidence did not authorize the jury to find in favor of the line purportedly marked anew by the processioners, and the court erred in denying the protestant's motion for new trial on the ground that the evidence did not authorize the verdict for the applicant and demanded a verdict for the protestant.

*Judgment reversed. Nichols, P. J., Bell, P. J., Jordan, Hall, Eberhardt and Deen, JJ., concur. Frankum, J., concurs in the results reached. Pannell, J., dissents.*

PANNELL, Judge, dissenting. A judgment was entered on the verdict in the present case on October 19, 1965. A motion for new trial was filed and a judgment overruling the motion for new trial was entered on March 11, 1966. Within the time allowed the movant entered an appeal to this court on the judgment rendered on the verdict. The enumerations of error complain that *the trial court erred in overruling the motion for new trial for various reasons.*

It is my opinion that where an appeal is entered on a judgment rendered on a verdict and the only enumerations of error are those on the judgment overruling a motion for new trial, which latter judgment was entered several months subsequent to the judgment appealed from, such alleged error cannot be considered by this court.

Prior to the Act of 1953 (Ga. L. 1953, Nov. Sess., p. 440 et seq.) intermediate rulings of the court were excepted to pendente lite. This Act (Section (7) (a), p. 453; *Code Ann.* § 6-905) abolished such exceptions and, by amending *Code* § 6-701, in Section (7) (b) thereof, made provision for assigning error on antecedent rulings made in the progress of the case

which affected the final result of the case in a bill of exception based on the final judgment. Section 2 of the Act of 1957 (Ga. L. 1957, pp. 224, 230) added an additional provision to *Code* § 6-701 in part as follows: "Where a bill of exceptions is permissible, all judgments, rulings, or orders rendered in the case which are assigned as error, and which may affect the proceedings below, shall be reviewed and determined by the appellate court." The Supreme Court in *Burnham v. Wilkerson*, 217 Ga. 657, 659 (124 SE2d 389) interpreted these Acts and the provision of the Act of 1957 above quoted and said "the quoted clause of the 1957 Act was simply intended to allow all such rulings as were formerly the subject of exceptions pendente lite to be brought to the appellate courts together with exceptions to the final judgment entered in the case." It appears therefore that at this point in the history of our appellate procedure, judgments, rulings, and orders of the trial judge occurring subsequently to the judgment upon which the bill of exceptions was based could not be considered by the appellate courts. We have now converted to a procedure involving "appeals" rather than writs of error or bills of exception. The present law (the Appellate Practice Act of 1965, as amended) provides that where an appeal is taken from the final judgment or other judgment authorized under the Act "all judgments, rulings or orders rendered in the case which are raised on appeal, and which may affect the proceedings below, shall be reviewed and determined by the appellate court, without regard to the appealability of such judgment, ruling, or order standing alone, and without regard to whether the judgment, ruling, or order appealed from was final, or was appealable by some other express provision of law." The only difference is in the words "raised on appeal" in the present law and the words "assigned as error" in the prior law. I see no substantial difference between these two terms when considered within the context in which they are used. Under the old law, rulings "assigned as error" could only be considered if they preceded the judgment appealed from. Under the present law, judgments, rulings, or orders "raised on appeal" can only be considered when such judgment, ruling, or order

precedes the judgment appealed from. There is nothing in the Appellate Practice Act of 1965, as amended, which discloses any legislative intent to make judgments, rulings, or orders of the trial judge occurring subsequently to the judgment appealed from the subject matter of review on such appeal. The judgment of the trial judge should, therefore, be affirmed.

There is no disagreement between myself and the majority as to the ruling in the first headnote and some of the rulings in the corresponding division of the opinion. I agree that the enumerations of error are sufficiently definite. I agree that the motion for new trial tolled the time for filing the appeal. My only disagreement is that the court is passing upon alleged error in overruling a motion for new trial, committed by the trial judge subsequently to the judgment appealed from.